IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| BAY AREA REGIONAL MEDICAL CENTER, LLC, | § | BANKRUPTCY NO. 19-70013-EVR |
| | § | |
| DEBTOR. | § | CHAPTER 7 |

---

TRUSTEE'S MOTION TO MODIFY EXECUTORY CONTRACT
WITH AGILE CONSULTING GROUP, INC. TO REDUCE CONTINGENT FEE

---

**BLR 9013 Notice:** **This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**

**Represented parties should act through their attorney.**

TO THE HONORABLE EDUARDO V. RODRIGUEZ, UNITED STATES BANKRUPTCY JUDGE:

Catherine S. Curtis, Trustee (the "**Trustee**") in this Chapter 7 case, by and through her counsel Pulman, Cappuccio & Pullen, LLP, hereby files *Trustee's Motion to Modify Executory Contract with Agile Consulting Group, Inc. to Reduce Contingent Fee* (the "**Motion**")*, respectfully showing the Court as follows:

## I.   JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      On January 10, 2019, Debtor filed a voluntary petition under Chapter 7 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "**Bankruptcy Code**"). [ECF No. 1].

3.      The statutory predicate for the relief Debtor seeks is 11 U.S.C. § 365.

4.      Attached hereto as <u>Exhibit A</u> is the proposed order approving Trustee's Motion.

## II.      BACKGROUND

5.      On April 10, 2017, Debtor executed a contract (the "**Contract**") with Agile Consulting Group, Inc. ("**Agile**"). A copy of the contract is attached to this Motion as <u>Exhibit B</u>.

6.      Within the Contract, Agile agreed to provide consulting services regarding sales and use taxes, excise taxes, communication services taxes and any other operating taxes, and to secure credits or refunds of such taxes. <u>Exhibit B</u>, at 1. Agile has estimated that the Debtor may be entitled to a sales tax refund in the amount of $960,546.26. Debtor agreed to pay Agile for their services on a contingency fee basis based upon the total amount funds received through the tax refund process. *Id.* Debtor agreed to pay Agile 40% of any refunds and credits received as a result of Agile's services. *Id.*

7.      On April 19, 2018, Agile filed the first request for a sales tax refund for Debtor.

8.      On or around May 4, 2018, Debtor ceased operating as a medical hospital.

9.      On August 14, 2018, Agile filed a supplemental request for a sales tax refund for Debtor.

10.     On August 28, 2018, Agile filed a second supplemental request for a sales tax refund for Debtor.

11.     On March 8, 2019, the Court entered its *Order Extending Deadline to Accept or Reject Executory Contracts*, extending the deadline for the Trustee to accept or reject executory contracts until June 10, 2019. [ECF No. 74].

12.     On April 3, 2019, Trustee filed her Motion to Assume Executory Contract with Agile Consulting Group, Inc. [ECF No. 95].

13.     On April 26, 2019, the Court entered its Order Granting Trustee's Motion to Assume Executory Contract with Agile Consulting Group, Inc [ECF No. 113].

14.     In the interim, Agile collected assignment of rights letters from vendors and continued to follow up on the previous refund requests. On September 3, 2020, Agile filed an additional supplemental refund request. In February of 2021, Agile learned that there may be a statute of limitations issue as to the refunds requested on September 2, 2020. After consideration of the issue, the Trustee determined that litigation was in the best interest of the Estate.

15.     On May 4, 2021, Trustee filed her Application to Employ Hughes Watters Askanase, LLP as Special Litigation Counsel to the Chapter 7 Trustee [ECF No. [387].

16.     On May 27, 2021, the Court entered its Order Approving Trustee's Application to Employ Hughes Watters Askanase, LLP as Special Litigation Counsel to the Trustee [ECF No. 389].

17.     Based on the need to commence litigation to recover the sales tax refunds, Agile agreed to reduce its contingency fee percentage. This reduction allows for payment of Agile and Trustee's special counsel for their work, while providing a meaningful distribution to creditors. The Sales & Use Tax Consulting Agreement attached as Exhibit C ("**Revised Contract**"), provides for a reduced contingency fee percentage of fifteen percent (15%).

### III.   RELIEF REQUESTED

18.     By this Motion, Trustee requests the Court authorize the Trustee to enter into the Revised Contract with Agile, pursuant to 11 U.S.C. § 365(a) and Fed. R. Bankr. P. 6006.

### IV.   AUTHORITIES AND ARGUMENTS

19.     Section 365(a) of the Bankruptcy Code provides that a trustee may assume any executory contract or unexpired lease, subject to the court's approval. 11 U.S.C. § 365(a).

20.     The Fifth Circuit has held that an executory contract may be assumed as long as the assumption is made with proper business judgment. *Richmond Leasing Co. v. Capital Bank*, N.A., 762 F.2d 1303, 1308-09 (5th Cir. 1985). Courts apply the "business judgment test," requiring the showing that the proposed course of action will be advantageous to the estate and the decision be based on sound business judgment. *In re Idearc Inc.*, 423 B.R. 138, 162 (Bankr. N.D. Tex. 2009) subsequently aff'd sub nom. *In re Idearc, Inc.*, 662 F.3d 315 (5th Cir. 2011). As long as the assumption of an executory contract appears to benefit a debtor's estate, a court should only deny the request if business judgment is clearly erroneous or contrary to the Bankruptcy Code. *Richmond Leasing Co.*, 762 F.2d at 1308. (quoting *Allied Tech., Inc. v. R.B. Brunemann & Sons*, 25 B.R. 484, 495 (Bankr. S.D. Ohio 1982)).

21.     Entry into the Revised Contract is in the best interest of the Debtor's estate and its creditors, as Agile is qualified to provide tax advise and experienced in obtaining sales tax refunds. By entering into the Revised Contract, the Trustee will receive substantial assets in the form of sales tax refunds, which will in turn increase the estate assets for maximum distribution to creditors. In the Trustee's business judgment, continued employment of Agile will provide efficient administration in obtaining the sales tax refunds.

22.     Therefore, the Trustee respectfully requests that the Court enter an order authorizing her to enter into the Revised Contract with Agile.

**WHEREFORE**, Trustee respectfully requests that the Court enter an order authorizing her to enter into the Revised Contract with Agile, and for such other relief, both at law and in equity to which the Trustee may be justly entitled.

Respectfully submitted,

**PULMAN, CAPPUCCIO & PULLEN, LLP**
2161 NW Military Highway, Suite 400
San Antonio, Texas 78213
www.pulmanlaw.com
(210) 222-9494 Telephone
(210) 892-1610 Facsimile

By: */s/ Thomas Rice*
  Thomas Rice
  Texas State Bar No. 24025613
  trice@pulmanlaw.com
  Carissa Brewster
  Texas State Bar No. 24122933
  cbrewster@pulmanlaw.com

**ATTORNEYS FOR CATHERINE S. CURTIS, CHAPTER 7 TRUSTEE FOR THE ESTATE OF BAY AREA REGIONAL MEDICAL CENTER, LLC**

{00534451;2}

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served on July 27, 2021 via the Court's CM/ECF System as indicated below.

*Via CM/ECF* *fuqua@fuqualegal.com*
Richard L. Fuqua, II
Fuqua & Associates, PC
5005 Riverway, Ste. 250
Houston, TX 77056

*Via CM/ECF* *cboswell@southtexlaw.com*
US Trustee
606 N. Carancahua Suite 1107
Corpus Christ, TX 78401

*Via CM/ECF* *jsd@aol.com*
J. Scott Douglass
1811 Bering Dr., Suite 420
Houston, Texas 77057

*Via CM/ECF* *osonik@pbfcm.com*
Owen M. Sonik
Perdue, Brandon, et al., L.L.P.
1235 N. Loop West, Suite 600
Houston, Texas 77008

*Via CM/ECF* *haselden@hooverslovacek.com*
Melissa A. Haselden
Hoover Slovacek LLP
5051 Westheimer #1200
Houston, Texas 77056

*Via CM/ECF* *tcotton@utsystem.edu*
Traci L. Cotton
The UT System – Ofc of Gen. Counsel
210 W. 7th St.
Austin, Texas 78701

*Via CM/ECF* *darren@lawofficedm.com*
Darren Marlowe
Law Office of Darren Marlowe, PLLC
6709 Vanderbilt Ave.
Dallas, Texas 75214

*Via CM/ECF* *jason.starks@oag.texas.gov*
Jason A. Starks, Assistant Attorney General
Bankruptcy & Collections Division MC 008
P.O. Box 12548
Austin, Texas 78711-2548

*Via CM/ECF* *gkennedy@kennedyhodges.com*
Galvin B. Kennedy
4409 Montrose Blvd., Suite 200
Houston, Texas 77006

*Via CM/ECF* *cfitz@kennedyhodges.com*
Carl A. Fitz
4409 Montrose Blvd., Suite 200
Houston, Texas 77006

*Via CM/ECF* *lnorman@@andrewsmyers.com*
Lisa M. Norman
Andrews Meyers, P.C.
1885 St. James Place, 15th Floor
Houston, Texas 77056

*Via CM/ECF* *dvanderhahn@winstead.com*
Devin van der Hahn
Winstead PC
600 Travis Street, Suite 5200
Houston, Texas 77002

*Via CM/ECF* *rpatel@winstead.com*
Rakhee V. Patel
Winstead PC
2728 N. Harwood Street, Suite 500
Dallas, Texas 75201

*/s/Thomas Rice*
Thomas Rice

# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| BAY AREA REGIONAL MEDICAL CENTER, LLC, | § | BANKRUPTCY NO. 19-70013-EVR |
| | § | |
| DEBTOR. | § | CHAPTER 7 |

---

**AGREED ORDER GRANTING TRUSTEE'S MOTION TO ASSUME EXECUTORY CONTRACT WITH AGILE CONSULTING GROUP, INC. TO REDUCE CONTINGENT FEE**

---

On this date came on to be heard the *Trustee's Motion to Assume Executory Contract with Agile Consulting Group, Inc. to Reduce Contingent Fee* (the "Motion"). Based on the representations made in the Motion, the Court finds that (i) it has jurisdiction of the matters raised in the Motion pursuant to 28 U.S.C. 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. 157(b)(2); (iii) the relief requested in the Motion is in the best interest of the Debtor's estate and creditors; (iv) no amounts are due to cure; (v) proper and adequate notice of the Motion has been given and no further notice is necessary; (vi) no objections to the Motion have been filed; and (vii) based upon the record herein, after due deliberation, good and sufficient cause exists for the granting of the Motion in all respects.

**IT IS, THEREFORE, ORDERED** that pursuant to section 365 of the Bankruptcy Code, the Trustee is authorized to modify the executory contract with Agile Consulting Group, Inc., on behalf of the Estate.

**IT IS FURTHER ORDERED** that the Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

# # #

**AGREED**:

*s/ Thomas Rice*
Thomas Rice
Texas Bar No. 24025613
trice@pulmanlaw.com
Carissa Brewster
Texas Bar No. 24122933
cbrewster@pulmanlaw.com
**PULMAN, CAPPUCCIO & PULLEN, LLP**
2161 NW Military Highway, Suite 400
San Antonio, Texas 78213
www.pulmanlaw.com
(210) 222-9494 Telephone
(210) 892-1610 Facsimile
**ATTORNEY FOR CATHERINE STONE CURTIS,
CHAPTER 7 TRUSTEE FOR THE ESTATE OF
BAY AREA REGIONAL MEDICAL CENTER, LLC**


**AND**


Aaron C. Giles
Managing Principal
aaron.giles@salesandusetax.com
**AGILE CONSULTING GROUP, INC**.
3295 River Exchange Dr., Suite 165
Norcross, GA 30092
www.salesandusetax.com
Office: (888) 350-4829
Fax: (770) 206-2548

{00534451;2}

# EXHIBIT B

## Agreement

This Agreement is made and entered into as of this ___10th___ day of ___April___, 2017, by and between Agile Consulting Group, Inc. ("Agile"), located at 600 Ironwood Dr., Suite 621, Ponte Vedra Beach, FL 32082 and Bay Area Regional Medical Center, LLC ("Customer"), located at 200 Blossom St., Webster, TX 77598.

Customer wishes to contract with Agile to identify areas where sales and use taxes, excise taxes, communications services taxes and any other operating taxes have been paid or accrued in error or in excessive amounts, and to secure credits or refunds of such taxes. If the examination shows that Customer is entitled to tax savings or refunds, Agile will process these savings and refunds only after receiving permission from Customer.

**1. Services to be Provided.** Working within all applicable statutes, regulations, court decisions, and other legal guidelines, Agile will use its best efforts to identify where sales and use taxes, excise taxes, communications services taxes and any other operating taxes have been inappropriately billed by vendors or paid in error. As items are identified for possible refund or credit, Agile will (i) prepare and assemble all documentation necessary to effect a refund from the state government; (ii) prepare communications for Customer to send to its suppliers and/or vendors to obtain relevant information; (iii) perform administrative functions related to (i) and (ii), for example analyzing responses from suppliers, vendors or state tax authorities. Agile will be responsible for (a) responding to all inquiries from suppliers, vendors or state tax authorities regarding the refund claims or amended returns; and (b) handling any audit activity resulting from the filing of a refund claim or amended return. Customer reserves the right to decline filing any refund claim, amended return or notice to vendor regarding a tax refund or savings opportunity identified by Agile.

**2. Covenants.** Customer agrees to cooperate with Agile and to provide Agile with reasonable access to all sales tax returns filed for all periods within the open statute of limitations, along with available supporting documentation for each return. Customer also agrees to provide records of payments to vendors where sales taxes may have been charged in error. Customer will make reasonable working space, convenient to the required records, along with copying facilities available to Agile. Where feasible and mutually acceptable between the parties, portions of the work may be done at the offices of Agile.

**3. Compensation.** The parties agree that Agile's compensation will be 40% of any refunds and credits received as a result of the services rendered under this Agreement. Compensation is billable when refunds and credit memos are received or savings on prior overpayments are realized. Agile's bills are payable upon presentation to Customer. Payment for the entire invoice amount is due within forty-five (45) days from the invoice date. Any invoiced amounts not paid in full by that date will accrue interest at the rate of 1.5% per month until paid. Any compensation to Agile paid under this Agreement for a tax opportunity that is later denied, rejected, or revoked by a state taxing authority, shall be refunded promptly to Customer upon notification to Agile by Customer.

**4. Expenses.** It is agreed that the compensation set forth in Section 3 above will be the only monetary responsibility Customer has to Agile under this Agreement.

**5. Use of Customer's Logo.** Customer agrees that Agile may use Customer's company logo, in accordance with Customer's marketing guidelines, in Agile's future marketing materials.

**6. Termination.** This Agreement may be terminated by either party upon thirty (30) days notice to the other party. In the event of termination, Customer will compensate Agile as set forth in Section 3 above for all refunds and credits in process as a result of issues identified by Agile on the termination date. Upon final conclusion of Agile's services, Agile will promptly return to Customer all documents and items provided to Agile by Customer.

**7. Confidentiality.** Agile acknowledges that it will receive information and documents from Customer of a confidential nature and agrees to use such information and documents only for the purposes of this Agreement and that it will treat such information as confidential.

In witness whereof the parties have executed this Agreement on the day and year above written.

Agile Consulting Group, Inc.

_Aaron C. Giles_
Aaron C. Giles, Managing Principal

Bay Area Regional Medical Center LLC

_Signature_

_Stephen K Jones Sr_
Print Name          Title

# BAY AREA REGIONAL ≋ MEDICAL CENTER

## ADDENDUM TO AGREEMENT

Bay Area Regional Medical Center, LLC ("BARMC") and Agile Consulting Group, Inc. ("Vendor") are executing a Consulting Services Agreement ("Agreement") and wish to modify and supplement the terms of the Agreement pursuant to this Addendum to Agreement ("Addendum") as follows:

Acceptance:  Acceptance of the Agreement, indicated by the signature thereto by a qualified BARMC representative, is expressly conditioned upon Vendor's acceptance of the terms and conditions of this Addendum.

Confidentiality and Disclosure of Patient Information:  BARMC does not anticipate Vendor will obtain any Protected Health Information (PHI) as a result of this contract.  If an exchange of PHI is necessary pursuant to this Agreement, and no applicable exception applies, Vendor agrees to execute a mutually agreeable Business Associate Agreement prior to the receipt of any PHI.  Vendor will promptly report to BARMC's Privacy Officer in writing and by telephone to (281) 525-6511 any unauthorized breach, use or disclosure of PHI immediately upon becoming aware of it, but in no event later than five (5) days following the discovery.

Regulatory Compliance:  Vendor acknowledges (i) it is not now and has never been excluded from any federal healthcare program, including Medicare, Medicaid, TRICARE, CHAMPUS, maternal and child health block grants, social service grants and other state funded healthcare programs ("Program" or, the "Programs"); (ii) it is not owned or controlled by individuals who have been convicted, sanctioned and/or excluded from a Program; (iii) to the best of its knowledge, none of its employees, independent subcontractors or agents, have been convicted of a criminal offense which would trigger exclusion from a Program; and (iv) to the best of its knowledge, none of its employees, independent contractors or agents have been excluded from a Program. Vendor affirmatively agrees to immediately notify BARMC if Vendor, its owners, controlling individuals or any of its employees, independent contractors or agents are convicted or excluded by a Program. This Agreement is subject to immediate termination by BARMC upon written notice should Vendor, its owner, controlling individuals or any employee, independent contractor or agent be convicted, sanctioned or excluded by any Program during the term of this Agreement.

Corporate Compliance:  BARMC maintains a voluntary corporate compliance program to detect and prevent illegal and unethical activities.  Vendor confirms it has been informed of BARMC's corporate compliance hotline (844.240.0005) for reporting suspected fraud, abuse or other illegal or unethical activities, and will assure that all employees or agents of Vendor who may perform any of the services or obligations under the Agreement are informed of the same and instructed to report accordingly. Section 6032 of the Deficit Reduction Act (DRA) requires BARMC to educate its employees, contractors, and agents about Federal and state fraud, false claims laws and the whistleblower protections available under those laws. Compliance with Section 6032 of the DRA is a condition of receiving Medicaid payments.  BARMC has developed a policy which describes the required provisions of State and Federal laws which prohibit filing false claims and making false statements, located on the BARMC corporate website at: http://www.BARMC.us/DRA.

Compliance with Rules and Regulations:  Vendor agrees to comply with all applicable Federal, State, and Local laws, rules, regulations, and accreditation standards pertinent to this Agreement with BARMC.  Vendor further agrees to comply with BARMC's rules and regulations pertinent to this Agreement as may be adopted and/or amended from time to time during the term of this Agreement, which rules and regulations may address administrative matters, quality assurance and utilization review, and other matters related to patient care at BARMC.  Any ambiguity in this Agreement shall be resolved to permit BARMC to comply with all applicable Federal, State, and Local laws, rules, regulations, and accreditation standards pertinent to this Agreement, specifically including but not limited to HIPAA, the Security Rule, the Privacy Rule, and HITECH.

Independent Contractor Status:  It is mutually understood and agreed that Vendor and BARMC are at all times acting and performing as independent contractors.  Vendor shall be solely responsible for the payment of unemployment compensation, workers' compensation and any income, occupational, F.I.C.A. or other taxes, assessments, interest or penalty of any kind whatsoever assessed by any governmental agency or entity which may pertain to any monies earned, collected, paid or charged by or to Vendor (or any of its employees or agents) pursuant to this Agreement, and Vendor

# BAY AREA REGIONAL ⪦ MEDICAL CENTER

shall defend, indemnify and hold BARMC harmless with respect thereto. In addition, neither Vendor nor any of its employees or agents shall have any claim under this Agreement or otherwise against BARMC, its parent or any successor or assign for any employee benefits of any kind. No relationship, other than independent contractor, is created between the parties. Neither party has any rights as agent, employee, joint venturer or partner in the business of the other.

<u>For Profit Status</u>:  Vendor understands that BARMC is a for profit entity and not exempt from sales tax.  Vendor agrees that all invoices will be properly billed to include sales tax, when required and Vendor will timely submit sales tax payments to the appropriate state and/or local authority.

<u>BARMC Information Technology and Information Security (IT) Systems</u>:  The following subsections shall apply to all software, hardware, and related IT contracts:

    <u>Media Sanitization for Highly Sensitive Data</u>:  As applicable, to be determined by BARMC, Vendor agrees to provide a Certificate of Data Sanitization which indicates all BARMC data used or acquired by Vendor was destroyed in accordance with the National Institute of Standards and Technology Special Publication 800-88 <u>Guidelines for Media Sanitization</u>, as revised and amended.

    <u>Telephone and Data Connections – No Dedicated Modem Line</u>:  Vendor agrees to comply with all BARMC IT and IT Security requirements relevant to this agreement.  Vendor specifically acknowledges the prohibition of any external connection other than the BARMC Health network.  Vendor agrees not to connect or attempt to connect any dedicated modem lines.

<u>Vendor Personnel</u>:  The following subsections shall apply if any employee, independent contractor, or agent of Vendor will be physically present on BARMC premises pursuant to the Agreement, for any reason, including but not limited to consulting services, deliveries, setup, maintenance, general services, or Vendor representative courtesy visits:

    <u>Registration with Facility</u>:  All Vendor personnel are required to register with the Administrative Offices at all other BARMC facilities each time they visit a BARMC Health facility and/or hospital department.

    <u>Alcoholic Beverages, Drugs, and Other Harmful Paraphernalia</u>:  BARMC by policy is opposed to use of any substance which causes loss of bodily control, mental or physical, for any reason unless in a controlled environment and prescribed by a physician (i.e. inpatient or outpatient of BARMC).  Any person found to be using alcoholic beverages, illegal drugs or any other substance deemed harmful by BARMC officials will be turned over to the proper law enforcement authorities and banned from BARMC properties.  This is a "no tolerance" offense.

    <u>Smoking and Tobacco Products</u>:  BARMC by policy is completely tobacco-free.  The use of tobacco products, including smoking and chewing is not allowed in BARMC facilities and the BARMC hospital parking garage.  Vendor personnel are also requested not to utilize adjoining and nearby properties, public or private, for such activities.  Vendor agrees that BARMC officials may remove from BARMC property any non-complying Vendor personnel.

    <u>Conduct and Behavior</u>:  Vendor personnel are expected to behave in a professional manner and are prohibited from exhibiting any obscene or otherwise objectionable or offensive behavior, language, body action, etc., as defined by BARMC.  Fighting and/or horseplay are not condoned on any BARMC property.  These are "no tolerance" offenses.  Vendor personnel should always be respectful of their environment and others, especially in patient care areas.  Hallway conversations, phone and radio communications in patient care areas should be kept to a minimum and low in volume to avoid disturbing patients and visitors.

    <u>Dress Code and Personal Appearance</u>: Vendor personnel are expected to dress in a professional and non-offensive manner while working on BARMC property.  All Vendor personnel are expected to wear as a

# BAY AREA REGIONAL ≋≋ MEDICAL CENTER

minimum standard the following: 1) long pants that are not tattered, torn, or unsightly; 2) shirts with sleeves; 3) substantial shoes covering the entire foot; and 4) proper personal protective equipment (PPE) as required. Clothing should not have markings, symbols, or writing that is obscene, offensive or otherwise objectionable. Vendor personnel are also expected to maintain their appearance in a professional and non-offensive manner by maintaining proper personal hygiene and limiting the exposure of tattoos and body piercings. Vendor agrees that BARMC officials may remove from BARMC property any non-complying Vendor personnel.

<u>Vendor Personnel Information</u>: Vendor shall maintain and keep current information on Vendor personnel working on BARMC Property. Vendor agrees it will maintain such Vendor personnel documentation in a manner and form that is accessible, in a timely fashion, should it be requested by BARMC or during a Joint Commission survey or other governmental, regulatory, or accrediting agency audit. BARMC reserves the right to randomly check the criminal background of any Vendor personnel working on BARMC property, using methods that comply with the Fair Credit Reporting Act. Any Vendor personnel found to have a criminal history which warrants concern will be requested to leave BARMC property. Vendor shall be responsible for obtaining valid authorizations from its personnel to conduct such background checks and shall provide BARMC with copies of such authorizations as requested.

<u>Arbitration</u>: Except as otherwise specifically indicated in this Agreement, any controversy or claim arising out of, or in connection with, this Agreement, or the breach or alleged breach thereof, shall be submitted to mandatory, binding arbitration to an arbitrator in accordance with the Rules of Procedure for Arbitration of the American Health Lawyers Association Alternative Dispute Resolution Service and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

<u>Governing Law and Venue</u>: This Agreement shall be governed by, and interpreted in accordance with, the internal laws of the State of Texas, without giving effect to its conflict of laws provisions. Harris County, Texas, shall be the sole and exclusive venue for any arbitration, litigation, special proceeding or other proceeding as between the parties that may be brought under, or arise out of, this Agreement.

<u>Notices</u>: All notices shall be deemed received on the day personally delivered, sent by facsimile with receipted delivery, or on the second day after mailing, certified or registered, return receipt requested, to the addresses reflected on the signature page, or to such other addresses as the parties shall respectively by notice designate.

<u>Insurance</u>: Upon request, Vendor shall provide BARMC a copy of any applicable certificate(s) of insurance prior to commencing work and shall not cancel any applicable insurance during the term of this Agreement without procuring like coverage.

<u>Access To Books and Records</u>: Until the expiration of six (6) years after the furnishing of services pursuant to this Agreement, Vendor shall make available upon written request to the Secretary of Health and Human Services, or upon request to the Comptroller General, or any of their duly authorized representatives, this Agreement and books, documents, and records of Vendor that are necessary to certify the nature and extent of costs for the purpose of reimbursement to BARMC. If Vendor enters into any subcontract to provide any part of the Agreement, Vendor shall require in such subcontract that the subcontractor also agree to such requirements.

<u>Indemnification - Vendor</u>: Vendor agrees to defend, indemnify and hold BARMC, its parent and successor or assigns harmless from and against any occurrence, liability, judgment, claim, award, cost of defense (including reasonable attorneys' fees) expense or other responsibility or cost of any nature whatsoever arising (or previously having arisen) derivatively out of any intentional act, negligence, or other act or omission of Vendor in connection with the provision of services under this Agreement.

<u>Indemnification – BARMC</u>: BARMC agrees to defend, indemnify and hold Vendor and its affiliates harmless from and against any occurrence, liability, judgment, claim, award, cost of defense (including reasonable attorneys' fees) expense

# BAY AREA REGIONAL ⬤ MEDICAL CENTER

or other responsibility or cost of any nature whatsoever arising (or previously having arisen) derivatively out of any intentional act, negligence, or other act or omission of BARMC in connection with the provision of services under this Agreement.

Entire Agreement:  This Agreement constitutes the entire understanding of the parties with respect to the subject matter hereof.  To the extent any provisions of this Addendum may be in conflict with the Agreement, the terms of this Addendum shall control.

Execution:  This Agreement may be executed in multiple counterparts, each of which shall constitute an original and all of which shall constitute but one Agreement. The parties hereby agree that this agreement may be executed by electronic signature, which shall be binding between the parties as though handwritten.  Electronic signature shall include either an electronic symbol adopted by a person with the intent to sign this Agreement or a photostatic copy of a handwritten signature.

Amendments:  Except as otherwise provided in this Agreement, no amendment to this Agreement shall be valid unless it is in writing and signed by the parties.

Waiver:  The waiver by either party to this Agreement of any one or more defaults, if any, on the part of the other, shall not be construed to operate as a waiver of any other future defaults, either under the same or different terms, conditions, or covenants contained in this Agreement.

Binding Effect:  This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their successors.

Assignment:  This Agreement may not be assigned, delegated or transferred by either party without the express written consent of the other and such transfer or assignment shall be void, except that BARMC may assign this Agreement to any entity that it controls, is controlled by, or is under common control with, now or in the future, or any entity which succeeds to its business through a sale, merger or other corporate transaction.  For purposes of this provision the term "control" (as used in the terms "control(s)," "controlled" and "under common control with") means either (i) holding 50% or more of the outstanding voting securities of an entity; (ii) having the contractual power presently to designate a majority of the directors of a corporation or, in the case of unincorporated entities, of individuals exercising similar functions; or (iii) in the case of an entity without outstanding voting securities, having the right to 50% or more of the profits of the entity or the right in the event of dissolution to 50% or more of the assets of the entity.

Survival:  Notwithstanding any provisions of this Agreement to the contrary, the provisions on indemnity, arbitration, confidentiality, access to books and records, notices, and survival shall survive the termination of this Agreement as well as any other provision, the survival of which is necessary to carry out the parties' intentions.

SIGNATURES ON FOLLOWING PAGE

# BAY AREA REGIONAL ⋙⋘ MEDICAL CENTER

BARMC:

_Steven K. Jones, Jr._
CEO
Bay Area Regional Medical Center
200 Blossom St.
Webster, TX 77598

VENDOR:

Signature: _Aaron C. Giles_

Printed Name: _Aaron C Giles_

Title: _President_

Address: _3295 River Exchange Dr. #165_
_Norcross, GA 30092_

# EXHIBIT C

# Sales & Use Tax Consulting Agreement

This Agreement is made and entered into as of this date as noted in the signature block by and between Agile Consulting Group, Inc. ("Agile"), located at 3295 River Exchange Dr., Suite 165, Norcross, GA 30092 and Bay Area Regional Medical Center, LLC ("Customer"), located at 200 Blossom St., Webster, TX 77598.

Customer wishes to contract with Agile to identify areas where sales and use taxes have been paid or accrued in error or in excessive amounts, and to secure credits or refunds of such taxes. If the examination shows that Customer is entitled to tax savings or refunds, Agile will process these savings and refunds only after receiving permission from Customer.

**1. Services to be Provided.** Working within all applicable statutes, regulations, court decisions, and other legal guidelines, Agile will use its best efforts to identify where sales and use taxes have been inappropriately billed by vendors or paid in error by Customer. As items are identified for possible refund or credit, Agile will (i) prepare and assemble all documentation necessary to affect a refund from the state government; (ii) prepare communications for Customer to send to its suppliers and/or vendors to obtain relevant information; (iii) perform administrative functions related to (i) and (ii), for example analyzing responses from suppliers, vendors or state tax authorities. Agile will be responsible for (a) responding to all inquiries from suppliers, vendors or state tax authorities regarding the refund claims or amended returns; and (b) handling any audit activity resulting from the filing of a refund claim or amended return. Customer reserves the right to decline filing any refund claim, amended return or notice to vendor regarding a tax refund or savings opportunity identified by Agile.

**2. Covenants.** Customer agrees to cooperate with Agile and to provide Agile with reasonable access to all sales tax returns filed for all periods within the open statute of limitations, along with available supporting documentation for each return. Customer also agrees to provide records of payments to vendors where sales taxes may have been charged in error. Customer will make reasonable working space, convenient to the required records, along with copying facilities available to Agile. Where feasible and mutually acceptable between the parties, portions of the work may be done at the offices of Agile.

**3. Compensation.** The parties agree that Agile's compensation will be **15%** of any refunds, credits or reduction in taxes received as a result of the services rendered under this Agreement. Compensation is billable when refunds and credit memos are received or savings are realized. Agile's bills are payable upon presentation to Customer. Payment for the entire invoice amount is due within thirty (30) days from the invoice date. Any invoiced amounts not paid in full by that date will accrue interest at the rate of 1.5% per month until paid.

**4. Expenses.** It is agreed that the compensation set forth in Section 3 above will be the only monetary responsibility Customer has to Agile under this Agreement.

**5. Use of Customer's Logo.** Customer agrees that Agile may use Customer's company logo in Agile's future marketing materials.

**6. Termination.** This Agreement may be terminated by either party upon thirty (30) days notice to the other party. In the event of termination, Customer will compensate Agile as set forth in Section 3 above for all refunds and credits in process as a result of issues identified by Agile on the termination date. Upon final conclusion of Agile's services, Agile will promptly return to Customer all documents and items provided to Agile by Customer.

**7. Confidentiality.** Agile acknowledges that it will receive information and documents from Customer of a confidential nature and agrees to use such information and documents only for the purposes of this Agreement and that it will treat such information as confidential.

In witness whereof the parties have executed this Agreement on the day and year written below.

Agile Consulting Group, Inc.

*Aaron C. Giles*
Aaron C. Giles, Managing Principal

Bay Area Regional Medical Center, LLC

_____
*Signature*

Catherine Stone Curts     Trustee
*Print Name*              *Title*

7-22-2021
*Date*

# BAY AREA REGIONAL ≋ MEDICAL CENTER

## ADDENDUM TO AGREEMENT

Bay Area Regional Medical Center, LLC ("BARMC") and Agile Consulting Group, Inc. ("Vendor") are executing a Consulting Services Agreement ("Agreement") and wish to modify and supplement the terms of the Agreement pursuant to this Addendum to Agreement ("Addendum") as follows:

Acceptance:  Acceptance of the Agreement, indicated by the signature thereto by a qualified BARMC representative, is expressly conditioned upon Vendor's acceptance of the terms and conditions of this Addendum.

Confidentiality and Disclosure of Patient Information:  BARMC does not anticipate Vendor will obtain any Protected Health Information (PHI) as a result of this contract.  If an exchange of PHI is necessary pursuant to this Agreement, and no applicable exception applies, Vendor agrees to execute a mutually agreeable Business Associate Agreement prior to the receipt of any PHI.  Vendor will promptly report to BARMC's Privacy Officer in writing and by telephone at (281) 525-6511 any unauthorized breach, use or disclosure of PHI immediately upon becoming aware of it, but in no event later than five (5) days following the discovery.

Regulatory Compliance:  Vendor acknowledges (i) it is not now and has never been excluded from any federal healthcare program, including Medicare, Medicaid, TRICARE, CHAMPUS, maternal and child health block grants, social service grants and other state funded healthcare programs ("Program" or, the "Programs"); (ii) it is not owned or controlled by individuals who have been convicted, sanctioned and/or excluded from a Program; (iii) to the best of its knowledge, none of its employees, independent subcontractors or agents, have been convicted of a criminal offense which would trigger exclusion from a Program; and (iv) to the best of its knowledge, none of its employees, independent contractors or agents have been excluded from a Program. Vendor affirmatively agrees to immediately notify BARMC if Vendor, its owners, controlling individuals or any of its employees, independent contractors or agents are convicted or excluded by a Program. This Agreement is subject to immediate termination by BARMC upon written notice should Vendor, its owner, controlling individuals or any employee, independent contractor or agent be convicted, sanctioned or excluded by any Program during the term of this Agreement.

Corporate Compliance:  BARMC maintains a voluntary corporate compliance program to detect and prevent illegal and unethical activities.  Vendor confirms it has been informed of BARMC's corporate compliance hotline (844.240.0005) for reporting suspected fraud, abuse or other illegal or unethical activities, and will assure that all employees or agents of Vendor who may perform any of the services or obligations under the Agreement are informed of the same and instructed to report accordingly. Section 6032 of the Deficit Reduction Act (DRA) requires BARMC to educate its employees, contractors, and agents about Federal and state fraud, false claims laws and the whistleblower protections available under those laws. Compliance with Section 6032 of the DRA is a condition of receiving Medicaid payments.  BARMC has developed a policy which describes the required provisions of State and Federal laws which prohibit filing false claims and making false statements, located on the BARMC corporate website at: http://www.BARMC.us/DRA.

Compliance with Rules and Regulations:  Vendor agrees to comply with all applicable Federal, State, and Local laws, rules, regulations, and accreditation standards pertinent to this Agreement with BARMC.  Vendor further agrees to comply with BARMC's rules and regulations pertinent to this Agreement as may be adopted and/or amended from time to time during the term of this Agreement, which rules and regulations may address administrative matters, quality assurance and utilization review, and other matters related to patient care at BARMC.  Any ambiguity in this Agreement shall be resolved to permit BARMC to comply with all applicable Federal, State, and Local laws, rules, regulations, and accreditation standards pertinent to this Agreement, specifically including but not limited to HIPAA, the Security Rule, the Privacy Rule, and HITECH.

Independent Contractor Status:  It is mutually understood and agreed that Vendor and BARMC are at all times acting and performing as independent contractors.  Vendor shall be solely responsible for the payment of unemployment compensation, workers' compensation and any income, occupational, F.I.C.A. or other taxes, assessments, interest or penalty of any kind whatsoever assessed by any governmental agency or entity which may pertain to any monies earned, collected, paid or charged by or to Vendor (or any of its employees or agents) pursuant to this Agreement, and Vendor

# BAY AREA REGIONAL ≋ MEDICAL CENTER

shall defend, indemnify and hold BARMC harmless with respect thereto. In addition, neither Vendor nor any of its employees or agents shall have any claim under this Agreement or otherwise against BARMC, its parent or any successor or assign for any employee benefits of any kind. No relationship, other than independent contractor, is created between the parties. Neither party has any rights as agent, employee, joint venturer or partner in the business of the other.

<u>For Profit Status</u>: Vendor understands that BARMC is a for profit entity and not exempt from sales tax. Vendor agrees that all invoices will be properly billed to include sales tax, when required and Vendor will timely submit sales tax payments to the appropriate state and/or local authority.

<u>BARMC Information Technology and Information Security (IT) Systems</u>: The following subsections shall apply to all software, hardware, and related IT contracts:

<u>Media Sanitization for Highly Sensitive Data</u>: As applicable, to be determined by BARMC, Vendor agrees to provide a Certificate of Data Sanitization which indicates all BARMC data used or acquired by Vendor was destroyed in accordance with the National Institute of Standards and Technology Special Publication 800-88 <u>Guidelines for Media Sanitization</u>, as revised and amended.

<u>Telephone and Data Connections – No Dedicated Modem Line</u>: Vendor agrees to comply with all BARMC IT and IT Security requirements relevant to this agreement. Vendor specifically acknowledges the prohibition of any external connection other than the BARMC Health network. Vendor agrees not to connect or attempt to connect any dedicated modem lines.

<u>Vendor Personnel</u>: The following subsections shall apply if any employee, independent contractor, or agent of Vendor will be physically present on BARMC premises pursuant to the Agreement, for any reason, including but not limited to consulting services, deliveries, setup, maintenance, general services, or Vendor representative courtesy visits:

<u>Registration with Facility</u>: All Vendor personnel are required to register with the Administrative Offices at all other BARMC facilities each time they visit a BARMC Health facility and/or hospital department.

<u>Alcoholic Beverages, Drugs, and Other Harmful Paraphernalia</u>: BARMC by policy is opposed to use of any substance which causes loss of bodily control, mental or physical, for any reason unless in a controlled environment and prescribed by a physician (i.e. inpatient or outpatient of BARMC). Any person found to be using alcoholic beverages, illegal drugs or any other substance deemed harmful by BARMC officials will be turned over to the proper law enforcement authorities and banned from BARMC properties. This is a "no tolerance" offense.

<u>Smoking and Tobacco Products</u>: BARMC by policy is completely tobacco-free. The use of tobacco products, including smoking and chewing is not allowed in BARMC facilities and the BARMC hospital parking garage. Vendor personnel are also requested not to utilize adjoining and nearby properties, public or private, for such activities. Vendor agrees that BARMC officials may remove from BARMC property any non-complying Vendor personnel.

<u>Conduct and Behavior</u>: Vendor personnel are expected to behave in a professional manner and are prohibited from exhibiting any obscene or otherwise objectionable or offensive behavior, language, body action, etc., as defined by BARMC. Fighting and/or horseplay are not condoned on any BARMC property. These are "no tolerance" offenses. Vendor personnel should always be respectful of their environment and others, especially in patient care areas. Hallway conversations, phone and radio communications in patient care areas should be kept to a minimum and low in volume to avoid disturbing patients and visitors.

<u>Dress Code and Personal Appearance</u>: Vendor personnel are expected to dress in a professional and non-offensive manner while working on BARMC property. All Vendor personnel are expected to wear as a

# BAY AREA REGIONAL ≡≋ MEDICAL CENTER

minimum standard the following: 1) long pants that are not tattered, torn, or unsightly; 2) shirts with sleeves; 3) substantial shoes covering the entire foot; and 4) proper personal protective equipment (PPE) as required. Clothing should not have markings, symbols, or writing that is obscene, offensive or otherwise objectionable. Vendor personnel are also expected to maintain their appearance in a professional and non-offensive manner by maintaining proper personal hygiene and limiting the exposure of tattoos and body piercings. Vendor agrees that BARMC officials may remove from BARMC property any non-complying Vendor personnel.

<u>Vendor Personnel Information</u>: Vendor shall maintain and keep current information on Vendor personnel working on BARMC Property. Vendor agrees it will maintain such Vendor personnel documentation in a manner and form that is accessible, in a timely fashion, should it be requested by BARMC or during a Joint Commission survey or other governmental, regulatory, or accrediting agency audit. BARMC reserves the right to randomly check the criminal background of any Vendor personnel working on BARMC property, using methods that comply with the Fair Credit Reporting Act. Any Vendor personnel found to have a criminal history which warrants concern will be requested to leave BARMC property. Vendor shall be responsible for obtaining valid authorizations from its personnel to conduct such background checks and shall provide BARMC with copies of such authorizations as requested.

<u>Arbitration</u>: Except as otherwise specifically indicated in this Agreement, any controversy or claim arising out of, or in connection with, this Agreement, or the breach or alleged breach thereof, shall be submitted to mandatory, binding arbitration to an arbitrator in accordance with the Rules of Procedure for Arbitration of the American Health Lawyers Association Alternative Dispute Resolution Service and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

<u>Governing Law and Venue</u>: This Agreement shall be governed by, and interpreted in accordance with, the internal laws of the State of Texas, without giving effect to its conflict of laws provisions. Harris County, Texas, shall be the sole and exclusive venue for any arbitration, litigation, special proceeding or other proceeding as between the parties that may be brought under, or arise out of, this Agreement.

<u>Notices</u>: All notices shall be deemed received on the day personally delivered, sent by facsimile with receipted delivery, or on the second day after mailing, certified or registered, return receipt requested, to the addresses reflected on the signature page, or to such other addresses as the parties shall respectively by notice designate.

<u>Insurance</u>: Upon request, Vendor shall provide BARMC a copy of any applicable certificate(s) of insurance prior to commencing work and shall not cancel any applicable insurance during the term of this Agreement without procuring like coverage.

<u>Access To Books and Records</u>: Until the expiration of six (6) years after the furnishing of services pursuant to this Agreement, Vendor shall make available upon written request to the Secretary of Health and Human Services, or upon request to the Comptroller General, or any of their duly authorized representatives, this Agreement and books, documents, and records of Vendor that are necessary to certify the nature and extent of costs for the purpose of reimbursement to BARMC. If Vendor enters into any subcontract to provide any part of the Agreement, Vendor shall require in such subcontract that the subcontractor also agree to such requirements.

<u>Indemnification - Vendor</u>: Vendor agrees to defend, indemnify and hold BARMC, its parent and successor or assigns harmless from and against any occurrence, liability, judgment, claim, award, cost of defense (including reasonable attorneys' fees) expense or other responsibility or cost of any nature whatsoever arising (or previously having arisen) derivatively out of any intentional act, negligence, or other act or omission of Vendor in connection with the provision of services under this Agreement.

<u>Indemnification – BARMC</u>: BARMC agrees to defend, indemnify and hold Vendor and its affiliates harmless from and against any occurrence, liability, judgment, claim, award, cost of defense (including reasonable attorneys' fees) expense

# BAY AREA REGIONAL ≋ MEDICAL CENTER

or other responsibility or cost of any nature whatsoever arising (or previously having arisen) derivatively out of any intentional act, negligence, or other act or omission of BARMC in connection with the provision of services under this Agreement.

Entire Agreement:  This Agreement constitutes the entire understanding of the parties with respect to the subject matter hereof.  To the extent any provisions of this Addendum may be in conflict with the Agreement, the terms of this Addendum shall control.

Execution:  This Agreement may be executed in multiple counterparts, each of which shall constitute an original and all of which shall constitute but one Agreement. The parties hereby agree that this agreement may be executed by electronic signature, which shall be binding between the parties as though handwritten.  Electronic signature shall include either an electronic symbol adopted by a person with the intent to sign this Agreement or a photostatic copy of a handwritten signature.

Amendments:  Except as otherwise provided in this Agreement, no amendment to this Agreement shall be valid unless it is in writing and signed by the parties.

Waiver:  The waiver by either party to this Agreement of any one or more defaults, if any, on the part of the other, shall not be construed to operate as a waiver of any other future defaults, either under the same or different terms, conditions, or covenants contained in this Agreement.

Binding Effect:  This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their successors.

Assignment:  This Agreement may not be assigned, delegated or transferred by either party without the express written consent of the other and such transfer or assignment shall be void, except that BARMC may assign this Agreement to any entity that it controls, is controlled by, or is under common control with, now or in the future, or any entity which succeeds to its business through a sale, merger or other corporate transaction.  For purposes of this provision the term "control" (as used in the terms "control(s)," "controlled" and "under common control with") means either (i) holding 50% or more of the outstanding voting securities of an entity; (ii) having the contractual power presently to designate a majority of the directors of a corporation or, in the case of unincorporated entities, of individuals exercising similar functions; or (iii) in the case of an entity without outstanding voting securities, having the right to 50% or more of the profits of the entity or the right in the event of dissolution to 50% or more of the assets of the entity.

Survival:  Notwithstanding any provisions of this Agreement to the contrary, the provisions on indemnity, arbitration, confidentiality, access to books and records, notices, and survival shall survive the termination of this Agreement as well as any other provision, the survival of which is necessary to carry out the parties' intentions.

SIGNATURES ON FOLLOWING PAGE

# BAY AREA REGIONAL ⋙ MEDICAL CENTER

BARMC:

_Steven K. Jones, Jr._
CEO
Bay Area Regional Medical Center
200 Blossom St.
Webster, TX  77598

VENDOR:

Signature: _Aaron C. Giles_

Printed Name: _Aaron C Giles_

Title: _President_

Address: _3295 River Exchange Dr. #165_
_Norcross, GA  30092_